UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT PONTE, Trustee of the Adam Ponte
Trust dated July 30, 1993 and Trustee of the
Irene Ponte Trust dated July 30, 1993,

    Plaintiff,

vs.                                                                            Case No. 13-10370

DWAYNE McLACHLAN, an individual,                    HON. AVERN COHN
former Pittsfield Township Assessor;
JULIE ALBERT, Pittsfield Township Assessor,
PITTSFIELD CHARTER TOWNSHIP;
MANDY GREWAL, Pittsfield Township
Supervisor; ALAN ISRAEL, Pittsfield Township
Clerk; PATRICIA TUPACZ-SCRIBNER,
Pittsfield Township Trustee; STEPHANIE HUNT,
Pittsfield Township Trustee, GERALD KRONE,
Pittsfield Township Trustee; FRANK LOTFIAN,
Pittsfield Township Trustee; and MICHAEL YI,
Pittsfield Township Trustee, last seven collectively
the Pittsfield Charter Township Board of
Trustees; CATHERINE McCLARY, Washtenaw
County Treasurer, jointly and severally,

    Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANT WASHTENAW COUNTY TREASURER'S MOTION TO DISMISS (Doc. 44) AND GRANTING DEFENDANTS TOWNSHIP'S, McLACHLAN'S, ALBERT'S, GREWAL'S, ISRAEL'S, SCRIBNER'S, HUNT'S, KRONE'S, LOTFIAN'S AND YI'S MOTION TO DISMISS (Doc. 45) AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT (Doc. 46) AND DENYING PLAINTIFF'S MOTION TO STRIKE (Doc. 62)**

**I. INTRODUCTION**

This is a 42 U.S.C. § 1983 and Racketeer Influenced and Corrupt Organization Act

(RICO), 18 U.S.C. § 1961, *et seq.* case. Plaintiff Robert Ponte (Plaintiff) is the trustee of

the Adam Ponte Trust and the Irene Ponte Trust (the "trusts"), both dated July 30, 1993. Together, the trusts own four parcels of land, covering approximately 110 acres, in Pittsfield Township, Washtenaw County. Nearly 60 acres is comprised of vacant farmland; 50 acres is farmed.

Plaintiff's second amended complaint (Doc. 41) claims that Defendants formulated a plot to impose unconstitutional burdens on the trusts' property by levying exorbitant real property taxes. It is in two counts, phrased by Plaintiff as follows:

Count I      Deprivation of Constitutional Rights under Color of Law, 42 U.S.C. § 1983 et seq.

Count II     RICO, 18 U.S.C. § 1961, et seq.

Before the Court are two separate motions to dismiss filed by Defendants (Docs. 44 and 45); Plaintiff's motion for leave to file a third amended complaint (Doc. 46); and Plaintiff's motion to strike (Doc. 62). Particularly the following papers have been filed:

Doc. 44      Defendant Washtenaw County Treasurer's Motion To Dismiss Plaintiff's Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) (25 pages and 15 exhibits);

Doc. 45      Motion To Dismiss Plaintiff's Second Amended Complaint Under Federal Rule Of Civil Procedure 12(b)(6) On Behalf Of Defendants Pittsfield Charter Township, Dwayne McLachlan, Julie Albert, Mandy Grewal, Alan Israel, Patrica Tupacz-Scribner, Stephanie Hunt, Gerald Krone, Frank Lotfian, and Michael Yi (29 pages and 3 exhibits);

Doc. 46      Plaintiff's Motion For Leave To File (Proposed) Third Amended Complaint (11 pages and 1 exhibit);

Doc. 47      Plaintiff's Brief Responding To Defendant-Treasurer's Motion To Deny Subject Matter Jurisdiction Under The *Rooker-Feldman* Abstention Doctrine And To Defendants' Motions To Dismiss For Failure To State A § 1983 Claim (26 pages);

Doc. 48      Plaintiff's Brief Responding To Defendants' Motions To Dismiss For Failure To State A Rico Claim (23 pages and 1 exhibit);

Doc. 55     Response Brief In Opposition To Plaintiff's Motion For Leave To File (Proposed) Third Amended Complaint On Behalf Of Defendants Pittsfield Charter Township, Dwayne McLachlan, Julie Albert, Mandy Grewal, Alan Israel, Patrica Tupacz-Scribner, Stephanie Hunt, Gerald Krone, Frank Lotfian, and Michael Yi (22 pages);

Doc. 56     Defendant Washtenaw County Treasurer's Brief In Opposition To Plaintiff's Motion For Leave To File (Proposed) Third Amended Complaint (15 pages and 5 exhibits);

Doc. 57     Plaintiff's Brief Replying To Township Defendants' Brief Responding To Plaintiff's Motion For Leave To File (Proposed) Third Amended Complaint (9 pages);

Doc. 59     Plaintiff's Answer To County Treasurer's Brief Responding To Plaintiff's Motion For Leave To File (Proposed) Third Amended Complaint and Brief Replying To Township Defendants' Brief Responding To Plaintiff's Motion For Leave To File (Proposed) Third Amended Complaint (10 pages);

Doc. 60     Defendant Washtenaw County Treasurer's Reply Brief In Support Of Motion To Dismiss Plaintiff's Complaint Pursuant To Fed. R. Civ. P. 12(b)(6) (14 pages and 6 exhibits);

Doc. 61     Reply Brief In Support Of Motion To Dismiss Plaintiff's Second Amended Complaint Under Federal Rule Of Civil Procedure 12(b)(6) On Behalf Of Defendants Pittsfield Charter Township, Dwayne McLachlan, Julie Albert, Mandy Grewal, Alan Israel, Patrica Tupacz-Scribner, Stephanie Hunt, Gerald Krone, Frank Lotfian, and Michael Yi (13 pages); and

Doc. 62     Plaintiff's Motion To Strike Defendant County Treasurer's Brief Replying To Plaintiff's Response To Defendant County Treasurer's Motion To Dismiss (8 pages and 3 exhibits).

For the reasons that follow:

Defendant Washtenaw County Treasurer's Motion to Dismiss is GRANTED;

Defendants Township's, McLachlan's, Albert's, Grewal's, Israel's, Scribner's, Hunt's, Krone's, Lotfian's and Yi's Motion to Dismiss is GRANTED;

Plaintiff's Motion for Leave to File an amended complaint is DENIED; and

Plaintiff's Motion To Strike is DENIED.[1]

This case is DISMISSED.

## II. BACKGROUND

Fairly read, the second amended complaint says that the Defendants conspired to overvalue the trusts' property. Thus, according to Plaintiff, the trusts' property taxes are excessive and unconstitutional.

### A. The Administrative/State Court System

Under the Michigan General Property Tax Act (the "GPTA"), "all property, real and personal . . . , shall be subject to taxation." Mich. Comp. Laws § 211.1. The process begins by an annual assessment of property "made by an assessor who has been certified as qualified. . . ." *Id.* § 211.10d(1). To this end, assessors "shall use only the official assessor's manual or any manual approved by the state tax commission, consistent with the official assessor's manual, with their latest supplements . . . , as a guide in preparing assessments." *Id.* § 211.10e. Property is "assessed at 50% of its true cash value under section 3 of article IX of the state constitution of 1963." *Id.* § 211.27a(1); *see also* Mich. Const. Art. IX, § 3.

The GPTA defines true cash value as "the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale." Mich. Comp. Laws § 211.27(1). Several

---

[1] Plaintiff argues that the Treasurer's reply brief should be stricken because it adds an argument that was not included in the Treasurer's original brief. The Court will not strike the Treasurer's reply brief on this basis. The parties have had the benefit of oral argument and Plaintiff responded to the Treasurer's reply brief in his motion to strike. The motion is, therefore, DENIED.

factors may be considered by the assessor in determining the true cash value of a parcel of property. These factors include comparable sales of similar property at a public auction, the advantages and disadvantages of location, zoning restrictions, and existing use, among other things. *Id.*

The GPTA provides a process for an aggrieved taxpayer to seek review of an assessment. The first step is appealing to the township board of review. The board of review has the power to review the true cash value of the property. Mich. Comp. Laws § 211.29(2); § 211.30(4). If the taxpayer/property owner is dissatisfied, he "may appeal the contested portion of the assessment . . . to the tax tribunal. . . ." Mich. Comp. Laws § 205.22(1). However, "[a] protest to the Board of Review is a statutory prerequisite to the exercise of jurisdiction by the [Michigan Tax Tribunal]." *Abundant Life Christian Ctr. v. Mich. Charter Twp. of Redford*, No. 310713, 2013 WL 3957708, at *1 (Mich. Ct. App. Aug. 1, 2013) (citations omitted).

If a taxpayer is dissatisfied with the tax tribunal's decision, he "may take an appeal by right . . . to the court of appeals." *Id.* § 205.22(3). "The taxpayer . . . may take further appeal to the supreme court in accordance with the court rules provided for appeals to the supreme court." *Id.*

## B. Plaintiff's Course of Action

Plaintiff disagreed with the assessor's assessment of the trusts' property in 2009 and 2010 because he says that the property did not draw any offers when listed at a fraction of the assessed value. Because Plaintiff disagreed with the assessor's calculation of the true cash value of the property, he says he petitioned the December 2010 board of review

for qualified error.[2]  Plaintiff, however, does not provide his application or any correspondence between him and the board of review.  In addition, Plaintiff's complaint claims differential and discriminatory tax treatment, an issue that does not fall within the ambit of "qualified error."  Plaintiff says that "[q]ualified error was simply not the sort of petition that the [b]oard of [r]eview cared to hear and decide."  (Doc. 41 at 6, ¶ 21).

In July of 2011, Plaintiff says that he appealed the board of review's refusal to hear the trusts' petition for "qualified error" to the Michigan Tax Tribunal.  Plaintiff does not provide any correspondence between him and the tax tribunal, nor does he provide any decisions that were issued by the tax tribunal.  Plaintiff says that the tax tribunal issued an Order of Partial Dismissal and Order Placing Petitioner in Default, summarily upholding the board of review's refusal to hear the trusts' petition for "qualified error."  To cure an unrelated defect having to do with the trusts' adjacent parcels, the tax tribunal required Plaintiff to amend the petition.

For reasons not explained in the second amended complaint, Plaintiff says that the tax tribunal held a hearing on July 10, 2012 to determine whether the trusts' property was properly assessed.  The tax tribunal heard testimony regarding comparable sales.  Plaintiff says that, after the hearing, "the [t]ribunal refused to rehear its unsolicited refusal to hear the [trusts'] petition for qualified error."  (Doc. 41 at 10, ¶ 44).  Again, Plaintiff does not provide a transcript, order, or decision of the tax tribunal.

By the beginning of 2013, the 2010 taxes on the trusts' property remained unpaid.

---

[2] Qualified error allows a taxpayer to dispute an assessed value and is statutorily defined.  Mich. Comp. Laws § 211.53b(8).  Among other things, a taxpayer may assert qualified error based on a clerical error, a mutual mistake of fact, or an error regarding the correct taxable status of the real property being assessed.

6

On February 20, 2013, the treasurer obtained a final Judgment of Foreclosure by way of *in rem* tax foreclosure proceedings for properties having unpaid 2010 property taxes, which included the trusts' property. The trusts redeemed the property within the redemption period by paying the 2010 taxes.

The second amended complaint also contains a multitude of irrelevant facts such as the history of the sale of the property and zoning changes. Boiled down to the relevant facts, Plaintiff is claiming that the trusts' property is over-assessed in an unconstitutional manner.

### III. STANDARD OF REVIEW

**A. Motion to Dismiss**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir. 2007). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted).

**B. Motion to Amend**

Fed. R. Civ. P. 15(a)(2) allows a party to amend its complaint after a responsive pleading has been filed, with written consent of the opposing party or the court's leave. "The court should freely give leave when justice so requires." Fed. R. Ci. P. 15(a)(2). Although Rule 15 states that leave "shall be freely given" when the underlying facts would support a claim, grounds for denying a motion for leave to amend include undue delay, bad faith or dilatory motive on the part of the movant, failure to cure deficiencies by amendments previously allowed, lack of notice to the opposing party, prejudice to the opposing party, and futility of the amendment. *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).

The decision whether or not to permit the amendment is committed to the discretion of the trial court. *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-32 (1971); *Estes v. Kentucky Util. Co.*, 636 F.2d 1131, 1133 (6th Cir. 1980). This discretion, however, is "limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits," rather than the technicalities of pleadings. *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987) (citation omitted); *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). When denying a motion to amend, a court must find "at least some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). Delay to the other party,

standing alone, is not enough to bar the amendment if the other party is not prejudiced. *Id.* (citation omitted).

Moreover, proper grounds to deny a motion to amend exist if the amendment would be futile. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst., LLC v. Med. Mut. of Ohio*, 601 F.3d 505 (6th Cir. 2010) (citation and internal quotations omitted).

## IV. DISCUSSION

### A. Dismissal is Appropriate Under the Comity Doctrine

Under the Supreme Court's precedents, the doctrine of comity renders federal court jurisdiction inappropriate in this matter because the trusts have an adequate remedy available in the state court system.

The Supreme Court in *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100 (1981) explained that principles of comity bar federal court actions brought under § 1983 to redress the allegedly unconstitutional administration of a state tax system. In *McNary*, petitioners were real property owners who filed suit under § 1983 "alleging that respondents, the County's Tax Assessors, Supervisors, and Director of Revenue, and three members of the Missouri State Tax Commission, had deprived them of equal protection and due process of law by unequal taxation of real property." *Id.* at 105–06. The Supreme Court reasoned that principles of federalism prevented federal courts from invoking jurisdiction in such matters.

First, the Supreme Court reasoned that the petitioners would not "recover damages under § 1983 unless a district court first determines that respondents' administration of the

9

County tax system violated petitioners' constitutional rights." *Id.* at 113. This, the Supreme Court stated, would in essence require the district court to enter a declaratory judgment which "would be fully as intrusive as the equitable actions that are barred by principles of comity." *Id.* In addition, the Supreme Court stated that "the intrusiveness of such § 1983 actions would be exacerbated by the nonexhaustion doctrine of *Monroe v. Pape*, 365 U.S. 167 (1961)" because "[t]axpayers such as petitioners would be able to invoke federal judgments without first permitting the State to rectify any alleged impropriety." *Id.* at 113–14.

Second, the Supreme Court explained that "the very maintenance of the suit itself would intrude on the enforcement of the state scheme." *Id.* at 114. Quoting the district court's opinion, the Supreme Court stated:

> "To allow such suits would cause disruption of the states' revenue collection systems equal to that caused by anticipatory relief. State tax collection officials could be summoned into federal court to defend their assessments against claims for refunds as well as prayers for punitive damages, merely on the assertion that the tax collected was willfully and maliciously discriminatory against a certain type of property. Allowance of such claims would result in this Court being a source of appellate review of all state property tax classifications."

*Id.* (quoting 478 F. Supp. 1231, 1233–34 (1979)). The chilling effect of allowing § 1983 actions against key state tax officials and subjecting them to the prospect of personal liability to numerous taxpayers, as described by the Supreme Court, would "operate to suspend collection of the state taxes . . . , a form of federal-court interference previously rejected by this Court on principles of federalism." *Id.* at 115 (internal citation omitted).

In concluding, the Supreme Court stated:

> Therefore, despite the ready access to federal courts provided

10

> by *Monroe* and its progeny, we hold that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts. Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court. *See Huffman v. Pursue, Inc.*, 420 U.S. 592, 605 (1975); *Matthews v. Rodgers*, 284 U.S. 521, 526 (1932).

*Id.* at 116.

The Supreme Court recently addressed the same issue in *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 130 S.Ct. 2323 (2010). In *Levin*, independent marketers selling natural gas to Ohio consumers sued the Ohio Tax Commissioner in federal court alleging Ohio's preferential tax treatment to local distribution companies of natural gas–by way of three tax exemptions not available to independent marketers–was discriminatory under the Commerce and Equal Protection Clauses. In other words, the independent marketers complained that they were taxed unevenly in comparison to local distribution companies. *Id.* at 2333. The Supreme Court confirmed that comity concerns require federal courts to "refrain from taking up cases of this genre, so long as state courts are equipped fairly to adjudicate them." *Id.* at 2334. As explained by the Supreme Court, if a state tax scheme is unconstitutionally discriminatory to a certain class, the state courts and legislature are better positioned to address the situation. *Id.* at 2335 (citing *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 817–18 (1989)).

Like *McNary* and *Levin*, the comity doctrine requires dismissal of Plaintiff's federal court action. Accepting the allegations in Plaintiff's second amended complaint as true, this case belongs in state court. A comprehensive administrative scheme is available for the trusts to challenge the property assessments in question. If unsatisfied, or if the trusts want

11

to raise constitutional claims, the state courts are equally equipped to hear § 1983 and RICO claims. Because a plain, adequate, and complete remedy is available in the state courts, and the trusts may ultimately seek review of the state court decisions in the United States Supreme Court, this action is not appropriate in this Court.

**B. Plaintiff's Proposed Third Amended Complaint is Futile**

Plaintiff's proposed third amended complaint does not do anything to save his claims. Aside from proposing the addition of another defendant, Plaintiff's proposed third amended complaint is virtually identical to the second. Therefore, the same comity concerns render jurisdiction inappropriate.

## V. CONCLUSION

For the reasons stated above,

the Treasurer's motion to dismiss was granted;

the Township's, McLachlan's, Albert's, Grewal's, Israel's, Scribner's, Hunt's, Krone's, Lotfian's and Yi's motion to dismiss was granted;

Plaintiff's motion to amend was denied; and

Plaintiff's motion to strike was denied.

SO ORDERED.

    S/Avern Cohn
UNITED STATES DISTRICT JUDGE

Dated: September 12, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 12, 2013, by electronic and/or ordinary mail.

    S/Sakne Chami
Case Manager, (313) 234-5160